# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

## CIVIL CASE NO. 3:05cv059

PAUL ANTONIO ERVIN,      )
                                )
      **Plaintiff,**      )
                                )
      **vs.**            )    **MEMORANDUM OF DECISION**
                                )          **AND ORDER**
                                )
**R. F. HAMMOND, JR., J. C.**  )
**LONG, CAPTAIN LEVINS, D. L.**  )
**KELLOUGH, RON STARLING,**  )
**E. NORRIS TOLSON, E.D. DUFT,**  )
**and JAMES A. SMALLRIDGE,**  )
                                )
      **Defendants.**    )
_____)

      **THIS MATTER** is before the Court on the Rule 12(b) Motion to Dismiss of Defendants Hammond, Starling and Tolson (the Department of Revenue Defendants or DOR Defendants) [Doc.3]**,** and the Rule 12(b) Motion to Dismiss of Defendants Long, Levins, Kellough, Duft and Smallridge (the Police Defendants) [Doc.6], and the Motion to Amend of the Plaintiff. [Doc.38].

      Pursuant to standing orders of this Court and 28 U.S.C. §636, both Motions to Dismiss were referred to the Magistrate Judge for

recommendation as to disposition.  Magistrate Judge Keesler issued a

Memorandum and Recommendation [Doc.43], to which Defendant

Hammond objected [Doc.44], and to which Defendants Long, Levins,

Kellough, Duft and Smallridge[1] objected [Doc.45], and to which the Plaintiff

objected [Doc.46].  All objections were timely filed.  The Court has

conducted a *de novo* review of those portions of the Memorandum and

Recommendation to which specific objections were filed.  28 U.S.C. §636,

Fed.R. Civ.P. 72.


## PROCEDURAL AND FACTUAL BACKGROUND

The Plaintiff, who appears *pro se*, initiated this action on February

14, 2005, alleging violations of 42 U.S.C. §§1983[2] & 1985[3] [Doc. 1] by the

---

[1] It is unclear why Defendants Duft and Smallridge objected to the Memorandum and Recommendation, since the Magistrate Judge recommended that all claims against both of these Defendants be dismissed with prejudice.

[2] "Every person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]" 42 U.S.C. §1983.

[3] "If two or more persons in any State ... conspire ... for the purpose of depriving, either directly or indirectly, any person ... of the equal protection of the laws, or of equal privileges and immunities under the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is ... deprived of having and exercising any right or privilege of a citizen of the United States, the party so ... deprived may have an action for the recovery of damages occasioned by such ...

Defendants who, at the time of the events alleged, were employed by the Charlotte Mecklenburg Police Department and/or the North Carolina Department of Revenue, Unauthorized Substance Tax Division. [Doc. 1]. In his Complaint, Ervin alleges that on April 2, 2002, the Defendants entered his residence without a search warrant and illegally searched his home for evidence of drugs. [Id., at 5]. Ervin claims that during a three hour period, he was handcuffed, interrogated and told that he should provide information about drug trafficking or he would be forced to go to jail. [Id.] Defendant Long threatened Ervin that if he did not produce such information, his personal property would be confiscated by the North Carolina Department of Revenue in order to pay a tax assessment for the possession of controlled substances. [Id.]. When Ervin persisted in his lack of knowledge, Long called Defendant Hammond, an agent with the Department of Revenue, and told him to come to Ervin's home. [Id.]. Hammond arrived and seized sixty-six items from Ervin's home. [Id.]. At the time of the seizure, Ervin alleges that he was not under arrest, the officers did not have a search warrant and there were no controlled substances in his home. [Id.]. Ervin also alleges that Hammond did not

---

deprivation, against any one or more of the conspirators." 42 U.S.C. §1985.

serve him with a tax assessment prior to the seizure and never provided notice of his right to appeal the assessment and seizure. [Id.]. Exhibits attached to Ervin's Complaint show that among the property seized was his 1993 Suzuki motorcycle which was sold by the State of North Carolina. [Inventory of Seized Property, Notice of Cancellation and Order to Surrender Certificate of Title, *attached to* Doc. 1at 23, 25]. Ervin also alleged that his computer, along with software, and recording equipment were seized and sold at public auction with the funds also being paid to the State as a tax assessment for controlled substances. [Doc. 1at 12].

Ervin alleges that when he continued to refuse to provide information about drug trafficking, Defendant Long told him that without such information, Ervin would be arrested and it would be necessary to have his dogs picked up by Animal Control where they would be euthanized. [Id., at 6]. Ervin told Long that he had family and friends who would care for the dogs if he were to be incarcerated; however, Long called Animal Control which in fact did take custody of the dogs. [Id.]. A few weeks later, the dogs were euthanized by Animal Control. [Id.].

Long told Ervin that if "he did not give" Long "something," then Long would "fix it" so that Ervin would never see his daughter again. [Id.].

4

Defendant Long instructed Defendant Kellough to go to the van which had been driven by the authorities to Ervin's home.  [Id.].  Defendant Kellough went to the van and returned with a duffle bag which contained plastic bags of white powdery substances.  [Id., at 6-7].  Ervin thought they were planning to plant evidence of drugs in his home.  [Id., at 7].  As a result, he told them that although he did not know any drug dealers, he did know individuals who smoked marijuana occasionally.  [Id.].  Long instructed Ervin to call any such individual and arrange a meeting for the purchase of marijuana.  [Id.].  Ervin did so and arranged a meeting with an individual known as "Bill" to take place in a vacant house within 45 minutes.  [Id.].  When Ervin reported the meeting to Long, Long told Ervin "the deal was off."  [Id.].

Ervin was arrested, placed in pre-trial detention within the state criminal justice system and charged with drug trafficking and possession of drug paraphernalia.  [Id.].  Ervin was tried for possession of drug paraphernalia and was acquitted.  [Id.].  A second trial for drug trafficking resulted in a deadlocked jury and the prosecutor dismissed the charges.  [Id.].

On April 10, 2002, Defendant Smallridge, at the request of the

Charlotte Mecklenburg Police Department, mailed a letter to Ervin's landlord which allegedly contained false information. [Id., at 9]. Although not specifically alleged, it appears from the context of the Complaint that the letter advised the owner of the property, from whom Ervin rented, that controlled substances had been found on the property. [Id.]. Ervin was evicted as a result of the letter and he claims that Smallridge conspired to have him evicted. [Id.].

Ervin alleged the following causes of action: (1) illegal search and seizure of his property by Defendants Hammond, Starling and Tolson (the DOR Defendants); (2) deprivation of his due process rights by the DOR Defendants; (3) illegal search and seizure by Defendants Long and Kellough; (4) deprivation of the right to remain silent by Defendants Long and Kellough; (5) illegal detention by Defendants Long and Kellough; (6) false imprisonment by Defendants Long and Kellough; (7) conspiracy to deprive him of his constitutional rights by all Defendants; and (8) conspiracy to commit perjury to deprive him of his constitutional rights by Defendants Long, Levins and Kellough. Ervin did not specify in what capacity he stated claims against the Defendants, and did not name the State of North Carolina, the City of Charlotte or Mecklenburg County as

defendants.

All Defendant moved to dismiss for failure to state a claim upon which relief can be granted.  The Magistrate Judge recommended as follows: regarding the Department of Revenue Defendants  1) that all claims against Defendants Tolson and Starling be dismissed - to which Plaintiff has objected;  2) that any official capacity claims against Defendant Hammond be dismissed with prejudice - to which no objection has been filed;  3) that the §1983 individual capacity procedural due process claim against Defendant Hammond survive but that all other claims against him in his individual capacity be dismissed with prejudice - to which Defendant Hammond objected; regarding the Police Defendants 4) that all claims against Defendant Smallridge be dismissed with prejudice - to which no objection has been filed;  5) that all claims against Defendant Duft be dismissed with prejudice - to which Plaintiff objected;  6) that the §1983 individual capacity claims for illegal search and seizure and false arrest against Defendants Long and Kellough survive - to which said Defendants objected;  7) that the §1983 individual capacity claim for supervisory liability against Defendant Levins survive - to which Defendant Levins objected;  8) that the §1983 individual capacity conspiracy claims

against Defendants Levins, Long and Kellough survive - to which said Defendants objected; and 9) all other claims be dismissed with prejudice - to which no objection has been filed.

## STANDARD OF REVIEW

A district court reviews specific objections to a Memorandum and Recommendation under a *de novo* standard. 28 U.S.C. §636(b). "Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir.1987), *overruled on other grounds* Douglass v. United Ervs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996). To the extent that a party asserts claims in the objections which were not asserted in support of or in opposition to the motion, *de novo* review is not warranted. Price v. Dixon, 961 F.Supp. 894 (E.D.N.C. 1997)(claims cannot be raised for the first time in objections to a memorandum and recommendation); Wells v. Shriners Hospital, 109 F.3d 198, 200 (4th Cir. 1997)(boilerplate objections will not avoid the consequences of failing to object altogether). This Court, therefore, does not conduct a *de novo* review of those portions of the

Memorandum and Recommendation to which non-specific objections have been filed, or to which no objections have been filed.  As stated in the Memorandum and Recommendation, such failure to object constitutes a waiver of *de novo* review by this Court as to such issues, citing <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989).

The standard of review with regard to the Rule 12(b)(6) Motion is addressed *infra* because objections have been raised with regard to the standard of review suggested by the Magistrate Judge in his Memorandum and Recommendation.

## DISCUSSION

**The Objections of the Police Defendants.**

The Police Defendants raise three objections to the Memorandum and Recommendation: 1) that the Magistrate Judge employed an incorrect standard of review for testing the sufficiency of the Complaint, 2) that the Magistrate Judge failed to consider certain public records and transcripts that had been made a part of the Record, and 3) that the Magistrate Judge failed to follow the law regarding the doctrine of collateral estoppel. [Doc.45].  Each of these is addressed below.

**Applying the Correct Standard of Review**

The Police Defendants first argue that the Magistrate Judge applied the wrong standard in reviewing their motions asserting that the allegations of the Complaint fail to state claims against these Defendants upon which relief can be granted.[4]  Fed.R.Civ.P. 12(b)(6).

In the Memorandum and Recommendation, the Magistrate Judge noted that a Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove "no set of facts" which would entitle him to relief, citing <u>Republican Party of North Carolina v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1990) and <u>McNair v. Lend Lease Trucks, Inc.</u>, 95 F.3d 325, 328 (4th Cir. 1996) (*en banc*).  The Police Defendants object, stating that the "no set of facts" language stems from <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), which they argue was recently rejected by the Supreme Court in <u>Bell Atl. Corp. v. Twombly</u>, __ U.S. __, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007).

It is true that in <u>Twombly</u> the Supreme Court rejected the "no set of facts" language found in <u>Conley</u> which was previously used to evaluate

---

[4] Although the Police Defendants also asserts grounds under Rule 12(b)(1) & (2) for their motion to dismiss, their objections to the Memorandum and Recommendation are limited to Rule 12(b)(6).

complaints in connection with Rule 12(b)(6) motions.  In the opinion, issued

May 21, 2007, the Court wrote:

> While a complaint attacked by a Rule 12(b)(6) motion to
> dismiss does not need detailed factual allegations, a plaintiff's
> obligation to provide the "grounds" of his "entitle[ment] to relief"
> requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do[.]
> Factual allegations must be enough to raise a right to relief
> above the speculative level on the assumption that all the
> allegations in the complaint are true (even if doubtful in fact)[.]
>
> .  .  .
>
> Justice Black's opinion for the Court in Conley v. Gibson spoke
> not only of the need for fair notice of the grounds for entitlement
> to relief but of "the accepted rule that a complaint should not be
> dismissed for failure to state a claim unless it appears beyond
> doubt that the plaintiff can prove no set of facts in support of his
> claim which would entitle him to relief."  This "no set of facts"
> language can be read in isolation as saying that any statement
> revealing the theory of the claim will suffice unless its factual
> impossibility may be shown from the face of the pleadings[.] On
> such a focused and literal reading of Conley's "no set of facts,"
> a wholly conclusory statement of claim would survive a motion
> to dismiss whenever the pleadings left open the possibility that
> a plaintiff might later establish some "set of [undisclosed] facts"
> to support recovery. ... [Conley's "no set of facts"] phrase is
> best forgotten as an incomplete, negative gloss on an accepted
> pleading standard: once a claim has been stated adequately, it
> may be supported by showing any set of facts consistent with
> the allegations in the complaint.

Id., at 164-65, 168-69 (citations omitted).

Two weeks after the Twombly decision, the Supreme Court cited it in

another decision involving a motion to dismiss and a *pro se* litigant,

Erickson v. Pardus, __ U.S. __, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).  The Court there reiterated that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  Id.  The Court also noted, however, that the plaintiff in that case "ha[d] been proceeding, from the litigation's outset, without counsel.  A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Id.

In discussing the "conflicting signals" that these two decisions sent from the Court, the Second Circuit has concluded that "the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." Iqbal v. Hasty, 490 F.3d 143, 157 (2nd Cir. 2007), *petition for certiorari filed* 76 USLW 3349 (2007) (emphasis in original).

Although only in an unpublished decision, the Fourth Circuit has stated the standard of review after Twombly as follows:

[In reviewing a Rule 12(b)(6) motion, the] court will construe factual allegations in the nonmoving party's favor and will treat them as true,

12

but is "not so bound with respect to [the complaint's] legal conclusions." The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face."

Self v. Norfolk Southern Corp., 2008 WL 410284 **1 (4th Cir. 2008) (citations omitted).

In stating the standard of review for a Rule 12(b)(6) motion, the Magistrate Judge noted that the motion tests the sufficiency of the complaint without resolving conflicts of facts or the merits of the action. [Doc. 43, at 8]. Facts, he stated, are construed in favor of the plaintiff and as true. [Id.]. He also noted that the court is not obligated to accept as true legal conclusions contained within the complaint. [Id.]. The Magistrate Judge did not mention the Twombly decision, but he did discuss the deference provided to pro se litigants and this Court has found no case holding that Twombly trumps such deference. See, e.g., Alvarez v. Hill, __ F.3d __, 2008 WL 659570 **3 (9th Cir. 2008) (noting that prisoner had made factual allegations establishing a "plausible" entitlement to relief while also noting that conclusion was "bolstered by the 'less stringent standards' used to assess whether a pro se inmate's complaint places the

defendants on notice); *accord*, <u>Dudnikov v. Chalk & Vermillion Fine Arts, Inc.</u>, 514 F.3d 1063 (10th Cir. 2008); <u>Johnson v. Lappin</u>, 2008 WL 397575 (7th Cir. 2008); <u>Curto v. Bender</u>, 231 Fed.Appx. 93 (2nd Cir. 2007).  In fact, the <u>Erickson</u> decision reiterated that "'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" <u>Erickson</u>, 127 S.Ct. at 2200<u>.</u>  The Court, therefore, rejects the Police Defendants' claim that the Magistrate Judge used an improper standard of review.  To the extent that the "no set of facts" language has been pronounced outdated, the deference provided to Ervin's Complaint as a *pro se* litigant and the other statements of proper standards render the objection moot.

The Magistrate Judge recommended the denial of the Police Defendants' motion to dismiss the individual capacity claims for unlawful search and seizure and false arrest.  The Police Defendants argue that Ervin's Complaint did not sufficiently plead facts establishing that it was plausible that drugs were "planted" in his home by the Defendants.  As noted above, Ervin alleged that Long told Ervin that unless he provided information about drug trafficking, Long would "fix it" so that Ervin would never see his daughter again.  And, Ervin alleged that Defendant Long

14

instructed Defendant Kellough to go to the van. Defendant Kellough went to the van and returned with a duffle bag which contained plastic bags containing a white powdery substance. Construing the factual allegations in Ervin's favor and treating them as true, Ervin has stated a plausible claim that the officers intended to "plant" drugs unless Ervin provided information about drug trafficking.

The Police Defendants also claim that the three hour period during which Ervin claims he was handcuffed does not rise to the level of a constitutional violation, citing <u>Muehler v. Mena</u>, 544 U.S. 93, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005). That case, however, involved a detention *during the execution* of a search warrant seeking weapons in a house in the wake of a drive-by shooting. Ervin's allegation is that he was detained during a search which occurred *without* a search warrant. <u>See</u>, *e.g.*, <u>Payton v. New York</u>, 445 U.S. 573, 585-86, 100 S.Ct. 1371, 1379-80, 63 L.Ed.2d 639 (1980) (it is a "basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.").

For these reasons the Court must conclude that the Magistrate Judge correctly applied the standard under <u>Twombly</u>.

As part of their argument but without separately objecting thereto, the Police Defendants also fault the Magistrate Judge for finding a claim was stated for improperly securing Ervin's home while they waited for the delivery of a search warrant. The Magistrate made no such finding, however, and Ervin had not asserted such a claim. Ervin's claim is that the officers conducted a search of his home without a warrant, not that they secured his home while other officers procured a warrant. Likewise, Ervin did not allege that the officers began the search fifteen minutes before the warrant arrived; his claim is that the officers searched the house without a warrant.[5] This apparent disconnect between the facts alleged by the Plaintiff and the facts argued by the Defendants leads the Court to believe that the Defendants are advocating based on their understanding of the events as they occurred on the day in question. That, of course, is irrelevant to the examination of the Plaintiff's Complaint under 12(b)(6). The question at hand is whether the Plaintiff has stated a claim with the facts alleged in the Complaint. Whether Plaintiff can sustain those allegations with evidence is a matter for another day.

---

[5] It bears pointing out that the Defendants did not raise this issue previously before the Magistrate Judge. [Doc. 7]. <u>Price</u>, 961 F.Supp.894. That reason alone would warrant rejecting this objection.

The Court, therefore, rejects the Police Defendants' objection based on the use of an improper standard of review.

**Considering Documents Outside the Complaint**

The Police Defendants' second objection is based on the assertion that the Magistrate Judge failed to consider matters outside the Complaint but within the public record. "In this case, the Plaintiff attached police reports, court records, and trial transcripts to his Complaint and in Opposition to Defendants['] Motions to Dismiss." [Doc. 45 at 9]. As was the case earlier, the Police Defendants did not ask, in their motion to dismiss, that the Magistrate Judge consider such documents. Their argument was limited to an issue of collateral estoppel. During oral argument at the hearing, defense counsel asked the Magistrate Judge to take judicial notice of Ervin's prior state court certified judgment. [Doc. 31, at 45]. However, counsel was careful to urge the Court to limit any such notice: "you can listen to us talk outside the record all day, but in your final determination, if the court goes outside of those pleadings and those things that it can take judicial notice of, we're now entering the realm of summary judgment." [Id.]. The Court, therefore, concludes that the

objections raise an inconsistent position to that previously taken before the Magistrate Judge and for this reason alone warrant rejection.

It is true, as the Defendants state, that "[d]espite the express language of Fed.R.Civ.P. 12(b), '[t]he district court may take judicial notice of matters of public record' without converting a 12(b)(6) motion into a motion for summary judgment." Henson v. CSC Credit Services, 29 F.3d 280, 283 (7th Cir. 1994); *accord*, Boateng v. InterAmerican University, Inc., 210 F.3d 56, 60 (1st Cir. 2000), *certiorari denied* 531 U.S. 904, 121 S.Ct. 245, 148 L.Ed.2d 176 (2000), *rehearing denied* 531 U.S. 1032, 121 S.Ct. 616, 148 L.Ed.2d 527 (2000); Norfolk Federation of Business Dist. v. H.U.D., 932 F.Supp. 730, 736 (E.D.Va. 1996), *affirmed* 103 F.3d 119 (table), 1996 WL 671293 **1 (4th Cir. 1996) ("In short, a court may consider matters of public record, ... as well as exhibits attached to the complaint.").

Defendants' reliance on these cases, however, is misplaced. Plaintiff filed a Complaint containing form §1983 allegations and a lengthy narrative of the events he alleges. Attached to the Complaint is a property inventory supporting Plaintiff's allegations of damages along with a document of the Department of Motor Vehicles regarding the motorcycle allegedly confiscated by the Defendants. After the Defendants filed their Rule

12(b)(6) Motions that are before the Court today, Plaintiff filed a Response to those Motions to which Plaintiff attached some documents that contradict portions of Plaintiff's narrative set out in his Complaint. Defendants argue, in substance, that at the motion to dismiss stage that such subsequently filed documents should be considered. This goes well beyond asking the Court to take judicial notice of a public record. Moreover, Defendants argue, in substance, that all factual contradictions between the subsequently filed documents and the Complaint must be resolved *against* the Plaintiff, thus rendering Plaintiff's prior Complaint ineffective to state a claim. Defendants present no authority supporting such a proposition, and the cases cited by Defendants say nothing of the sort. In fact, the specific documents to which Defendants refer undermine Defendants' arguments. For instance, Plaintiff alleges in his Complaint that his state drug charge was dismissed for lack of evidence, but the Dismissal document filed by the District Attorney cites as the reason for the dismissal "lack of trial time / Mistried 2 times." [Doc.30]. Rather than conclusively proving that there was evidence to justify the charges against Plaintiff or that there was probable cause for the search, this only shows that there is a divergence of support as to the reasons for the dismissal. If

19

this is a material fact in this case, it may well allow Plaintiff to overcome summary judgment. It certainly does not serve to negate Plaintiff's allegations in his Complaint. In essence, the Defendants are asking that the truth or falsity of the matters asserted in this Complaint be determined from prior legal proceedings. Airframe Systems, Inc. v. Raytheon Co., 520 F.Supp.2d 258, 262 (D.Mass. 2007) ("It should be kept in mind, however, that '[a]lthough in certain circumstances a court's records are susceptible of judicial notice, that a fact sought to be noticed is found in a court's record is not talismanic.'"), quoting In re Armorflite Precision, Inc., 48 B.R. 994, 996 (D.Me. 1985).

In their argument the Police Defendants rely heavily on this Court's decision in Clark v. U.S.D.A., 2007 WL 3112458 (W.D.N.C. 2007). That reliance is misplaced. In Clark the plaintiff filed an action seeking a declaratory judgment that a note and deed of trust were void and unenforceable in order to prevent a foreclosure. The plaintiff herself made a part of the record a copy of the state foreclosure proceeding demonstrating that the issues of the validity of the debt and the deed of trust and the right to foreclose had already been adjudicated against her. Such a record warranted entry of judgment against the plaintiff based on

the preclusive effect of the state court action.  In the present case, however, the record does not contain sufficient documentation to show any final and preclusive judgment in another proceeding.  In fact, the Defendants concede in their arguments that they would need to undertake discovery and hope that they would find such documents.  This, of course, leaves open the question of whether such state court documents would reflect that there had been an adjudication against the Plaintiff after a full and fair opportunity to litigate the issue.  At this point all the Defendants offer is speculation that discovery might yield such documents.   This Court's decision in <u>Clark</u> does not support the Defendant's argument.

For these reasons the Magistrate Judge's application of the law to the Plaintiff's Complaint was correct, and the objection of the Police Defendants to the Magistrate Judge's failure to take into account documents that contradicted portions of that Complaint are overruled.


**Collateral Estoppel**

The third objection of the Police Defendants is that the Plaintiff's claim is precluded by the doctrine of Collateral Estoppel.  This was the thrust of their argument before the Magistrate Judge.  Their argument is

that the Plaintiff claims that the search of his home was without a valid warrant, but that the issue of the validity of the search was fully litigated in the suppression hearing in Plaintiff's state criminal prosecution.

The main problem with the Defendants' argument is that the record does not disclose what was litigated in the state court suppression hearing or what the result was.  In fact, in their Memorandum of Law in support of their Motion to Dismiss, these Defendants openly admit that "To establish collateral estoppel, the party asserting it must show the issue in question is identical to the previous issue and there was a full and fair opportunity to litigate in the prior proceeding." [Doc.7 at 8].  The Defendants then make the curious statement in a footnote that "Should Plaintiff deny the identical issues where [sic] raised in his criminal trial [sic] Defendant [sic] Long and Kellough would *request limited discovery on that issue to support a motion to dismiss*." [Id. at 8 n.1 (emphasis added)].  These Defendants further acknowledge in their objection to the Memorandum and Recommendation that they "requested that the Magistrate Judge allow them the opportunity for limited discovery for the Plaintiff to provide the pleadings and transcripts relating to his motion to suppress and the suppression hearing." [Doc.45 at11].  In their second objection these Defendants took issue with the

Magistrate Judge's failure to consider documents that have been filed in the Record.  In this objection these Defendant take issue with the Magistrate Judge having failed to give preclusive effect to documents that have not been filed with this Court.  As the Defendants acknowledge, it was their obligation - as the parties asserting collateral estoppel - to provide the Court with such documents, but they have not done so.  The most curious part of the Defendants' argument it that they acknowledge that they do not even have the documents upon which they rely.  They sought to be allowed discovery in order to discover documents in order to use them - not in a motion for summary judgment - but in support of their Rule 12 Motion to Dismiss.  If this argument is available to the Defendants at all, it is not available in support of their Ruler 12(b)(6) Motion.

The Defendants will have the opportunity to conduct the discovery they desire, and will have the opportunity to seek the public documents which they claim preclude Plaintiff's claim, and if such exist, Defendant will be able to present them to the Court at the appropriate time.   Defendants may be able to meet their burden at summary judgment, but they certainly have not met it at this stage.

It should be noted that the issue of whether the search of Plaintiff's

home was supported by a valid warrant or probable cause pertains to only a portion of the claim Plaintiff has asserted.  Even if the Defendants had presented the suppression documents to this Court and such documents said what Defendant hope they will say, this would address only a segment of this action.

**Objections of Defendant Hammond**

A central issue in the claim against Defendant Hammond is whether he issued Plaintiff a tax notice before seizing Plaintiff's property for payment of the "drug dealer tax," and whether such prior notice was required by law.  Plaintiff alleges in his Complaint that he was provided no notice at any time of any amounts due or informing him of his rights.

Defendant Hammond first apparently objects to the Magistrate Judge's conclusion that this allegation must be taken in the light most favorable to Plaintiff to establish - for the purposes of the Rule 12(b)(6) Motion - that no notice was given.  Instead, Defendant Hammond argues that the Magistrate Judge should have discarded Plaintiff's allegations in favor of Hammond's affidavit, wherein he asserts he provided the subject notice to Plaintiff. [Doc.44 at 3].  Defendant Hammond also points to some

contradictions between Plaintiff's allegations in his Complaint and some documents that Plaintiff has filed with the Court, as though Defendant Hammond is arguing against the credibility of the allegations in the Complaint.

In making these arguments it is as though the Defendant fails to recognize that in the Rule 12(b)(6) Motion the Court must take the allegations in the Complaint as true. <u>Erickson v. Pardus</u>, __ U.S. __, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). This is not the stage for the Court to weigh the credibility of Plaintiff's allegations. It is not appropriate for the Court to consider Defendant's affidavit. The Court must accept as true Plaintiff's allegation that he received no notice of the tax assessment. Once tested on cross-examination in a deposition or confronted with documents and exhibits, Plaintiff's allegations may not withstand the test. In examining a Rule 12(b)(6) Motion, however, the Court cannot attempt to anticipate what the evidence may later show.

Taken in the light most favorable to the Plaintiff, the allegations in the Complaint concerning Defendant Hammond conduct are: (1) Hammond seized Plaintiff's personal property before he had been arrested for a controlled substances violation; (2) Hammond entered Plaintiff's residence

and seized his personal property without the presence of a search warrant; (3) Hammond did not serve him with a warrant or notice pursuant to the Tax Act; (4) Hammond did not personally serve him with the assessment; that is, the amount of the tax, penalty, and interest due, and demand its immediate payment, prior to seizing his property; (5) Hammond did not provide him with notice at any time of his right to request a hearing, that he had the right to post a bond to prevent the confiscation and sale of his property, and that the assessment would become final unless Ervin requested a hearing with 30 days; (6) that Hammond confiscated virtually everything of value in Plaintiff's possession, without quantifying the debt that was to be satisfied, and even took such things as Plaintiff's personal family and vacation photos and the ashes of Plaintiff's deceased father, and even took actions resulting in Plaintiff's dogs being euthanized; and (7) Hammond's failure to abide by the statutory provisions cited deprived him of his right to post a bond and obtain a hearing before the assessment became final thus resulting in Plaintiff losing all his property. [Doc. 1 at 5-6].

Defendant Hammond argues that these allegations are insufficient as a matter of law to state a claim against him. He argues that the Magistrate

Judge was in error in concluding to the contrary because it is erroneous to conclude that North Carolina's Unauthorized Substances Tax Act, N.C. Gen. Stat. §105-113.05, *et. seq.* (Tax Act), "requires that prior to seizing an alleged 'dealer's' property, the seizing officer must provide the property owner notice of the unpaid tax and the procedure for posting a bond in lieu of seizure." [Doc. 43 at 13].  The Tax Act, Hammond argues, requires only that the dealer be notified in writing of the amount of the tax, penalty, and interest due and demand for immediate payment.  The distinction, Hammond claims, is crucial to the Magistrate's failure to find he is entitled to qualified immunity.[6]

North Carolina imposes an excise tax on controlled substances possessed by dealers.[7]  N.C. Gen. Stat. §105-113.107.  Local law enforcement authorities are required to notify the Department of Revenue when an individual in possession of such substances is arrested or when such substances are seized.  N.C. Gen. Stat. §105-113.108.  The Secretary of the Department of Revenue, in this case, Defendant

_____

[6] There has been no objection to the standard of review applied to a claim of qualified immunity and the Court therefore adopts the Magistrate Judge's statement. [Doc. 43 at 12-13].

[7] The statute defines "dealer" as meaning any person who constructively or actually possesses seven or more grams of a controlled substance, in this case, the alleged cocaine.  N.C. Gen. Stat. §105-113.106.

Hammond, is obligated by the statute to "notify the dealer in writing of the amount of the tax, penalty, and interest due [the assessment], and demand its immediate payment." N.C. Gen. Stat. §105-113.111. Any dealer/taxpayer may protest the assessment pursuant to the provisions of N.C. Gen. Stat. §105-241.1 which requires the Revenue officer to provide notice to the dealer that he must request a hearing within 30 days or the assessment will become final. N.C. Gen. Stat. §105-113.111 ("The dealer may seek review of the assessment as provided in [§105-113.241.1].");

§105-241.1 ("[T]he Secretary must notify the taxpayer in writing ... [and] must also advise the taxpayer that the proposed assessment will become final unless the taxpayer requests a hearing within the time set" in the Act.). The revenue agent may immediately collect the tax using a jeopardy assessment procedure; that is, by issuing the assessment and warrant and also seizing property with which to satisfy the tax, unless the dealer files a bond. N.C. Gen. Stat. §105-113.111. When the agent does use a jeopardy assessment, as may have been done by Hammond in this case, the Department is required to provide the dealer with written notice no later than 30 days after the jeopardy assessment that the dealer "may request a hearing on the jeopardy assessment following the procedure described in

the notice." N.C. Gen. Stat. §§105-241.1(a), (c), and (g). Thus, while the statute may not technically require that the Revenue Officer provide written notice to a dealer that he may halt the seizure of property by posting a bond, it does require that officer to provide written notice of the right to request a hearing either at the time of the assessment or, in the case of a jeopardy assessment, within 30 days after the seizure. In any event, the officer must serve the taxpayer with the assessment, a warrant and written notice of procedures.

The Plaintiff, however, in his Complaint alleges that "Bobby Hammond did not read or inform plaintiff of his rights to appeal the Assessment/Seizure with in [sic] a 30 day period to the Secretary of Revenue, [sic]" [Doc.1 at 5] and "plaintiff proclaims that following these General Statutes would have given him the opportunity to pay in full or post a bond for any moneys owed, at which time plaintiff would have appealed the assessment with in [sic] allotted time [sic]."[Id. at 6]. Construing these allegations in the light most favorable to the Plaintiff he is not only alleging that Defendant Hammond failed to present Plaintiff with the assessment prior to the seizure, but that Defendant Hammond failed to present Plaintiff with the requisite information at any time, even within the thirty days that

Defendant Hammond argues he was allowed by statute. Particularly when these allegations are taken together with the allegations that Defendant Hammond seized items of no market value for the apparent spite of depriving Plaintiff of such things as the ashes of his deceased father and his dogs, they appear to state a claim for depriving Plaintiff of his interest in certain property without due process of law under Tri County Paving, Inc. v. Ashe County, 281 F.3d 430 (4th Cir. 2002).

Defendant Hammond argues that he is entitled to qualified immunity because Plaintiff must show not only a violation of his constitutional rights but also that Defendant's actions in depriving him of those rights were "clearly established" as of the time of the events in question so that the alleged violation would have been "clear to a reasonable officer [that the alleged conduct] was unlawful in the situation confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). This is precisely the standard employed by the Magistrate Judge in his recommendation. In fact, Defendant Hammond acknowledges in his objections that notice is required, though he argues that notice after the fact of seizure is sufficient to satisfy the constitutional standard. Plaintiff, however, is alleging that no notice was given, either before or after the seizure. Plaintiff's case may not be able to survive on

this point at trial or even at summary judgment.  In the context of a Rule 12(b)(6) Motion, however, since the Court must take Plaintiff's allegations as true, the Court must conclude that the Plaintiff has stated a claim against Defendant Hammond under §1983 for violation of Plaintiff's procedural due process rights.

Finally, Hammond claims this action must be dismissed pursuant to the Tax Injunction Act, 28 U.S.C. §1341[8], which prohibits federal courts from enjoining the assessment and collection of state taxes.  It is first noted that Ervin's §1983 is brought against Hammond in his individual capacity, not against the State of North Carolina.  Moreover, Ervin does not seek a declaration that the Tax Act is invalid or unconstitutional, nor does he seek injunctive relief, a refund of the tax collected, or to interfere with the State's function in collecting such tax.  See, *e.g.*, Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981); DirecTV, Inc. v. Tolson, 513 F.3d 119 (4th Cir. 2008); Lawyer v. Hilton Head Public Service Dist. No. 1, 220 F.3d 298, 301-302 (4th Cir. 2000).  Nor is Ervin's suit against Hammond in his official capacity.

---

[8] 28 U.S.C. §1341 provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

<u>Lynn</u>, 134 F.3d at 587. Ervin's claim is for damages against Hammond in his individual capacity for a violation of his procedural due process rights pursuant to 42 U.S.C. §1983. <u>See</u>, *e.g.*, <u>Hibbs v. Winn</u>, 542 U.S. 88, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004) ("To determine whether this litigation falls within the [Tax Injunction Act's] prohibition, it is appropriate, first, to identify the relief sought."). Ervin does not bring a claim relating to the collection of state taxes; his claim is for a violation of his procedural due process rights. <u>Id</u>., at 107 n.9 ([The Supreme Court] "has relied on 'principles of comity' to preclude original federal-court jurisdiction only when plaintiffs have sought district-court aid in order to arrest or countermand state tax collection."); <u>DirecTV</u>, 513 F.3d at 128 ("Plaintiffs thus may not maintain their challenge under §1983 in the federal courts while the courts of North Carolina remain available to hear it."). Nothing about this claim would operate to "reduce the flow of state tax revenue." <u>McNary</u>, 454 U.S. at 107 n.4 (leaving open the possibility that a §1983 suit could proceed if it required no scrutiny of state tax assessment practice).

        Instead, this case is similar to recent cases by Circuit Courts determining that the Tax Injunction Act (TIA) does not preclude jurisdiction to adjudicate a challenge to procedural due process. <u>Luessenhop v.</u>

Clinton County, New York, 466 F.3d 259 (2nd Cir. 2006) (TIA does not preclude federal court jurisdiction to adjudicate taxpayer's challenge to notice of foreclosure as constitutionally inadequate); Levy v. Pappas, 510 F.3d 755, 763-64 (7th Cir. 2007) (finding that the TIA would not bar §1983 claim for retaliation but absolute prosecutorial immunity would); American Civil Liberties Union of Tennessee v. Bredesen, 441 F.3d 370 (6th Cir. 2006), *certiorari denied* 126 S.Ct. 2972, 165 L.Ed.2d 954 (2006) (TIA did not deprive federal courts of jurisdiction over First Amendment challenge to state statute); Howard v. City of Detroit, 73 Fed.Appx. 90 (6th Cir. 2003) (finding §1983 action for violation of procedural due process in foreclosure proceedings time-barred by statute of limitations but not by TIA); Patel v. City of San Bernardino, 310 F.3d 1138 (9th Cir. 2002); Butler v. Elle, 281 F.3d 014 (9th Cir. 2002) (recognizing such a cause may arise but finding no violation). The Court therefore rejects Hammond's objections.


**Plaintiff's Objections**

Plaintiff objects to the Magistrate Judge's recommendation that all claims against Defendants Tolson, Starling and Duft be dismissed. As to Tolson and Starling, the stated basis of Plaintiff's objection is that he has

not yet had the opportunity to conduct discovery.  At this stage, of course, discovery is irrelevant.  The question before the Court is whether the Complaint filed by the Plaintiff states a legally cognizable claim against Defendants Tolson and Starling.  Plaintiff raises no objection to the reasoning of the Magistrate Judge leading to the conclusion that no claim has been stated against either of these Defendants upon which relief can be granted.  The Plaintiff's objection to the recommendation that Defendants Tolson and Starling be dismissed will, therefore, be overruled.

As for Defendant Duft, Plaintiff made no allegations in his Complaint whatsoever.  There is no explanation in the Complaint as to why Defendant Duft is even named as a Defendant.  Plaintiff now tries to remedy this shortcoming by making allegations against Duft in his objection to the Memorandum and Recommendation.  Plaintiff, of course, cannot try to amend his pleadings "through the back door" by making allegations at this stage.  In his Complaint, Plaintiff states no claim against Defendant Duft. For that reason the objection to the Memorandum and Recommendation will be overruled.

**Recommendations to Which There Were No Objections**

The Magistrate Judge recommended that all official capacity claims against the Defendants be dismissed with prejudice. No party has objected to this recommendation, and thus all such claims will be dismissed. The Magistrate Judge recommended that all claims against Defendant Smallridge be dismissed with prejudice. No party had objected to this, and all such claims will be dismissed. The Magistrate Judge also recommended that all claims against Defendant Hammond, except for the individual capacity procedural due process claim under §1983, be dismissed, and no party has objected to this recommendation. For that reason all claims against Defendant Hammond, except the one stated will be dismissed. The Magistrate Judge recommended that all claims against Defendants Long and Kellough be dismissed except for the individual capacity search and seizure, false arrest and conspiracy claims addressed above. No objection has been lodged to this recommendation by any party, and thus all other claims against Defendants Long and Kellough will be dismissed. The Magistrate Judge also recommended that all claims against Defendant Levins except for the individual capacity supervisor liability and conspiracy claims be dismissed, and no objection has been

raised by any party. Thus, all other claims against Defendant Levins will be dismissed.

It should be noted that the Motions to Dismiss that are disposed of by this Order are now three years old. This delay is due in part to the backlog in this Court, but it is also due in part to the completely unnecessary procedural complexities that have been injected into this case by the parties. A Rule 12(b)(6) Motion is designed to test the viability of the claim *as alleged*. The filing of affidavits and multiple documents only serves to muddy the waters. Plaintiff's *pro se* prosecution of this case has contributed to the procedural quagmire that resulted, but he is not solely responsible. If the parties had proceeded with this matter in a manner contemplated by the Federal Rules of Civil Procedure, by this time the motions to dismiss would have been long disposed of and the parties likely would have completed discovery, argued the expected summary judgment motions and completed the trial, if such is in the offing. Trying to shorten (or short circuit) a case by making it procedurally more complex is a strategy that will rarely succeed. As this litigation will be proceeding, it is the hope of the Court that closer adherence to ordinary practice can be accomplished in the prosecution and defense of this case. In that regard,

the Plaintiff is urged, in the strongest possible terms, to secure counsel to represent him.

> Although a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers, *this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants*. Thus, although we make some allowances for the pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements, *the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record*.

Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005) (emphasis added).  Now that we depart from the pleadings phase of this case, this will be all the more true.  Plaintiff's unfamiliarity with the manner of procedure and his lack of objectivity have been a hindrance to the efficient administration of justice.  This can be remedied by Plaintiff retaining counsel, which he is strongly urged to do.


**Ervin's Motion to Amend.**

On December 2, 2006, Ervin moved to amend his Complaint to add two defendants, the individuals Animal Control officers who removed his dogs from his home. [Doc. 20].  By Order entered October 25, 2007, the

Magistrate Judge allowed the motion to amend provided that Ervin filed an amended complaint no later than November 30, 2007. [Doc. 37]. Instead of filing the amended complaint, as instructed, Ervin filed another motion for leave to amend the Complaint on November 5, 2007. [Doc. 38]. That motion remains pending; however, Ervin never filed an amended complaint as instructed by the Magistrate Judge.

The Court finds that Ervin was previously granted the relief now sought but failed to perfect the filing of an amended complaint. As a result, the pending motion will not be granted. Having failed to amend his Complaint within the time allowed, Ervin is limited to the Complaint as filed. Now that the Motions to Dismiss have been disposed of and the case is proceeding, the administration of justice would be thwarted by allowing the process to start all over with the filing of new pleadings.

**Order for Mediation**

In light of the present procedural posture of this case the parties would be well served to try to resolve this case at this time.

For this reason the Court will stay this matter for ninety days. During that period no discovery shall be commenced. The parties shall agree

within twenty-one days upon a mediator.  If the parties are unable to agree upon a mediator within that period of time, the parties are to notify the Court and a mediator will be appointed for the parties (who will serve at the parties' expense).  The mediation shall be conducted within the ninety days that this matter is stayed.  If the parties are unable to resolve this matter within that period, they shall within five days of the expiration of said ninety days file with the Court their Certificate of Initial Attorneys Conference, and the Court will forthwith issue a Pre-Trial Order and Case Management Plan.

**ORDER**

**IT IS, THEREFORE, ORDERED** as follows:

The motions to dismiss of the Defendants [Docs. 3 and 6] are hereby **GRANTED IN PART AND DENIED IN PART**; and, only the following claims remain:

    a.    claims for illegal search and seizure, false arrest and conspiracy to commit those violations of constitutional rights against Defendants Long and Kellough in their individual capacities;

b.  claims for supervisory liability for illegal search and seizure and false arrest and conspiracy to commit those violations of constitutional rights against Defendant Levins in his individual capacity;

c.  a claim for procedural due process violations against Defendant Hammond in his individual capacity.

All claims other than those set forth above as remaining in this case are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that for a period of ninety days from the entry of this Order that no further pleadings may be filed in this action absent prior permission from the Court.  A request for permission to file may not exceed two double-spaced pages in size 14 font with no footnotes.

**IT IS FURTHER ORDERED** that the parties shall mediate this case within ninety days of the entry of this Order.  The parties shall agree on a mediator and secure his/her services within twenty-one days of the entry of this Order.  If the parties are unable to so agree, the Magistrate Judge shall select a mediator and to notify the parties in writing of the name and address of such mediator.

**IT IS FURTHER ORDERED** that mediation in this matter shall occur on or before ninety days of entry of this Order. Failure of any party to cooperate in or attend mediation will result in an adverse ruling against that party, including without limitation, the dismissal of the action or the imposition of sanctions.

**IT IS FURTHER ORDERED** that the cost of mediation shall be shared equally by the parties, meaning that the Plaintiff shall be responsible for one third of the cost, Defendant Hammond shall be responsible for one third and the Police Defendants shall be responsible for one third, in accord with the Local Rules for this District.

**IT IS FURTHER ORDERED** that the parties shall advise the Court in writing of the results of mediation no later than five (5) business days after the conclusion thereof.

**IT IS FURTHER ORDERED** that if the parties are unable to resolve this matter at mediation that within ninety-five (95) days of the entry of this Order they shall file with this Court their Certificate of Initial Attorneys Conference in accord with the Local Rules, and the remaining Defendants shall filed their Answers to the Complaint within the same period.

**IT IS FURTHER ORDERED** that the case is hereby **STAYED** and the

Clerk of Court is instructed to administratively close this case pending

mediation.

Signed: March 31, 2008

Martin Reidinger
United States District Judge